Gladys L. COK

v.

Leo COK.

No. 82–396–Appeal.

Supreme Court of Rhode Island.

July 25, 1984.

Gladys L. Cok, pro se.
Leo Cok, pro se.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal by Gladys L. Cok (wife) and Leo Cok (husband) from an interlocutory judgment entered in the Family Court granting a divorce to both parties on the ground of irreconcilable differences, providing for custody and support of the minor child of the parties, and distributing the assets between the parties in accordance with the provisions of G.L.1956 (1981 Reenactment) § 15–5–16.1, as amended by P.L.1982, ch. 403, § 1. We affirm the judgment with one modification based upon a waiver made before this court by the wife. The facts of the case as set forth in a carefully prepared rescript by the trial justice are as follows.

Gladys L. Cok, Ph.D., and Leo Cok, M.D., were married on March 28, 1958. At the time of the entry of judgment the husband was fifty-three years of age, the wife was fifty-one years of age, and the parties had been married for twenty-three years. The one child born of the marriage was Igor, who was eleven years of age at the time of entry of the order pending final judgment. The husband was employed by the State of Rhode Island and at that time received an annual gross salary of $55,000 per year. The wife was employed at St. Joseph Hospital at an annual gross salary of $23,600. The parties jointly owned four parcels of real estate improved by dwelling houses and four parcels of real estate consisting of two lots of vacant land in Coventry, one lot in Florida, and one lot in New Hampshire. Three other parcels of real estate were held in the name of the wife and her mother, Antonia D. Lara, as joint tenants. The trial justice found as a fact that the three parcels of real estate owned as joint tenants by the wife and her mother "were purchased substantially with the monies of Mrs. Lara."

The trial justice further found that both parties were equally at fault in the breakdown of this marriage and in creating a tumultuous and stormy atmosphere in which the minor child had been reared. As a result of the inability of the parties to engage in any cooperative effort for the preservation of their real estate or for decision making in regard to the care of the child, the trial justice was forced to appoint a guardian ad litem and a conservator of the real estate. Both husband and wife objected to the appointment of these officers by the court.

At the conclusion of a series of approximately nineteen hearings before the trial justice beginning in January 1980 and extending through March 25, 1982, the trial justice entered the following orders based upon elaborate findings of fact and the hearing of a postjudgment motion filed under Rule 59 of the Rules of Procedure for Domestic Relations.

1. The wife's original petition for absolute divorce as amended from a bed and board petition on June 3, 1981, and husband's counterclaim were granted on the ground of irreconcilable differences.

2. The husband and wife were awarded joint custody of the minor child of the parties with physical possession to be with the wife except for school summer vacations during which the husband was allowed to take the child on an annual visit to Trieste in Europe. Otherwise, the parties were to divide the child's holiday periods on an alternating basis.

3. The husband was ordered to maintain and keep in full force and effect medical coverage on behalf of the minor child and to pay any medical or dental expenses not covered by Blue Cross. The husband was further ordered to pay $175 per week for the support of the minor child until such time as he should become emancipated or reach the age of eighteen years. The weekly support for the child was modified by a post-interlocutory judgment order so as to reduce said sum to $50 per week for that portion of the summer period when the child is in the physical custody of the father. The husband was ordered to maintain life insurance policies for the benefit of the minor child.

4. The three pieces of property listed in the name of the wife and her mother were assigned to the wife to the extent that the husband may have had any interest therein. The marital domicile was assigned to the wife in order that the custodial parent would have the marital domicile free and clear of encumbrances. The husband was ordered either to pay or to assume (by continuing monthly payments) the outstanding mortgage on the marital domicile, which at the time of the judgment had a balance of approximately $34,000. The husband was ordered to pay executions and other liens or second mortgages which were still outstanding on the marital domicile.

5. The balance of the real estate owned by the husband and wife was ordered to be sold and the proceeds divided equally between the parties after the payment of all outstanding mortgages, liens, and encumbrances. However, the share due the husband was ordered first to be applied to pay the obligations in respect to the marital domicile (unless he exercised the option to assume and pay the mortgage monthly.)

6. The husband was also ordered to pay from his share of the proceeds of the sale of said properties the amount of $15,000 as counsel fee to the attorney for the wife, Albert J. Mainelli, Esquire.

7. The court found that neither party was entitled to alimony and that neither party was in need of alimony. Consequently, no alimony was awarded.

8. As a result of the contumacious and completely uncooperative attitude of both parties, the court was required to appoint a guardian ad litem and conservator of assets. The court ordered that the reasonable fees of such appointees were to be paid from the proceeds of the sale of the real estate of the parties but that the husband was to be given credit for sums of money previously paid toward his share of these obligations.

9. By order dated April 6, 1982, the court fixed the fees of the guardian ad litem at $4,710 and the conservator in the amount of $3,183.41. Accumulated arrearages in back taxes on the marital domicile were ordered to be paid by the wife, and the attorneys for the parties, Joseph R. DeCiantis, Esquire, and Albert J. Mainelli, Esquire were appointed co-commissioners to implement the sale of the parcels of real estate previously ordered to be sold. Thereafter, both attorneys for the parties withdrew and the orders appointing them as co-commissioners were vacated.

The husband and wife appeal from the interlocutory judgment as revised. They filed briefs *pro se ipso* and argued orally before the court. Generally, the husband objected to the distribution of property, to the requirement that he pay $15,000 in counsel fees on his wife's behalf, to the amount of support required for the minor child, and to the failure of the court adequately to punish the contumacious conduct of the wife while finding the husband in contempt from time to time.

The wife vehemently objects to the failure of the court to provide her with alimony, to the appointment of the guardian ad litem and the conservator (both of whom she considered to be unnecessary), and to the attorney's fee awarded to Albert J. Mainelli, Esquire, to be paid by her husband. The wife also claims that she did not authorize the amendment on June 3, 1981, by her counsel of her complaint for separate maintenance to a complete and absolute divorce on the ground of irreconcilable differences.

No significant purpose would be served by a detailed analysis of the somewhat conclusory arguments presented by both parties. However, we shall attempt to deal with the issues raised in the order of their importance.

I

THE GRANTING OF THE DIVORCE

■ An examination of the voluminous transcripts in the case discloses be-

yond doubt that the finding of the trial justice that this marriage was "dead and a marriage in name only" and that the chances of the parties "ever being reconciled * * * are nil" was supported by clear and convincing evidence and is beyond rational dispute. Further, there is no indication on the record that the wife ever brought to the attention of the trial justice the fact that the amendment of her complaint was without authorization. It is a basic rule of appellate practice in this court that matters not brought to the attention of the trial justice may not be raised for the first time in this court on appeal. *Fiske v. MacGregor, Division of Brunswick*, R.I., 464 A.2d 719, 726 (1983); *Veach v. Veach*, R.I., 463 A.2d 508, 509 (1983); *Mailloux v. Mailloux*, R.I., 463 A.2d 192, 193 (1983). Consequently, this contention is utterly without merit.

## II

### ALIMONY

■ In respect to the need of the wife for alimony and the propriety of the court's decision that she was not entitled to such alimony, we believe that the trial justice was entirely correct in his analysis and conclusion. The wife is self-supporting and has a good salary. In accordance with the mandate of § 15-5-16.1, the trial justice assigned the assets prior to considering the question of alimony. The wife was given the marital domicile valued at between $98,000 and $101,000 free and clear. She was also awarded one-half of the net proceeds from the sale of the other properties owned by the parties. The husband's claims to the parcels owned jointly by his wife and her mother were also assigned to her. (For purposes of this award, the trial justice assumed without deciding that the husband might have had some colorable claim to this property.) Although we are of the opinion that the trial justice acted within the bounds of his discretion in making this assignment, it is clear that this wife under these circumstances is not enti-

tled to any further benefits or alimony from her former husband. The property assignment to the wife, especially taking into account the possibility of an interest on the part of the husband in properties jointly owned by the wife and her mother, might be termed extremely generous. In effect, this assignment leaves the husband without any likelihood of substantial net proceeds from his life's savings invested in the real estate jointly owned by the parties. His share of the net proceeds based upon the appraisal submitted to the court, after the deduction of the mortgage on the marital domicile and other liens on said domicile, is modest indeed. To add alimony to this assignment would have been an abuse of discretion. It is not the function of a trial justice in divorce cases to equalize the earning power of divorced parties. Rather, the function is to consider all of the elements in determining whether an award of alimony should be made. These elements include "[1] the length of the marriage; [2] the conduct of the parties during the marriage; [3] the health, age, station, occupation, amount and source of income, vocational skills and employability of the parties; and [4] the state and liabilities and needs of each of the parties as well as his prior assignment of property." Section 15-5-16, as amended by P.L.1981, ch. 320 § 1. The trial justice carefully considered all of these elements, as well as his prior assignment of property, in determining that no award of alimony should be made to either party. This determination was unassailably correct.

## III

### AWARD OF CUSTODY AND SUPPORT OF THE MINOR CHILD

■ Both parties object to the various aspects of the award of custody and support of the minor child. We are of the opinion that the trial justice was a model of forebearance and objectivity when he determined that these parties had long been using the child as "a mere chattel in a

custody fight * * *." The awarding of joint custody with physical custody in the wife during the school year and physical custody in the father during summer vacations was an appropriate exercise of judgment and discretion taking into account the best interests and welfare of the child. The support order for the benefit of the child was reasonable under all of the circumstances in the light of the ability of the husband to pay and the needs of the child. Great deference must be accorded to the findings of the trial justice on this issue. *Brierly v. Brierly*, R.I., 431 A.2d 410, 415 (1981); *Castelli v. Castelli*, 82 R.I. 232, 235, 107 A.2d 284, 286 (1954). The challenge to these orders is therefore rejected.

## IV

### ASSIGNMENT OF PROPERTY

In assigning the property between the husband and the wife, the trial justice exercised great care and utilized the reports and appraisals obtained by the conservator. He also considered carefully the testimony of a certified public accountant in establishing the probable source of funds used to purchase the property in the joint names of the wife and her mother. Faced with contradictory and often evasive testimony coupled with unsupported assertions, the trial justice attempted to extract truth from a morass created by lack of candor on the part of both husband and wife. Taking into account the totality of circumstances presented to the trial justice, the earning power of the husband, the earning power of the wife, and the need of the child for a reasonably secure setting, we are of the opinion that the assignment of property made by the trial justice was warranted by the evidence and was within the bounds of his discretionary power. In reaching his conclusion, he scrupulously considered all of the elements set forth in § 15–5–16.1. This court will not disturb findings made under such circumstances. See *Wordell v. Wordell*, R.I., 470 A.2d 665, 666–67 (1984).

## V

### AWARD OF COUNSEL FEES

On June 22, 1981, Albert J. Mainelli, Esquire, testified to the value of his legal services furnished to the wife over the period of this action for divorce. Relying upon an hourly rate of $85, he calculated a total fee of $23,800. The trial justice awarded the sum of $15,000 to be paid by the husband. The husband challenges this order and suggests that the wife is quite capable of paying her own attorney's fee. Remarkably, the wife agrees and stated before this court that she had paid Mainelli on a pay-as-you-go basis. The wife further stated in oral argument that under her agreement with Mainelli, no additional sums were to be paid beyond those for which he had billed her.

In respect to counsel fee, § 15–5–16 provides that the Family Court may order either of the parties to pay counsel fees to the other. In determining the amount of such counsel fees, the court is directed to consider all of the same factors, such as "length of the marriage; conduct of the parties during the marriage; the health, age, station, occupation, amount and source of income, vocational skills and employability of the parties; and the state and the liabilities and needs of each of the parties," as are determined in the awarding of alimony. The trial justice did consider all of these factors in the award of counsel fees.

However, in the case at bar, we need not at this juncture consider the correctness of the trial justice's conclusions. The statute provides that the award of counsel fee by one party to the other is for the benefit of the party in whose favor the award is made. By stating to this court that she is not in need of counsel fee by reason of having paid the entire amount due and owing to her attorney, the wife in effect is waiving the request for counsel fee upon which the award was based. We recognize that the wife's waiver is not conclusive upon her attorney, who may claim

additional sums due and owing from her. However, in light of her statement before this court, we believe it best that the wife assume the responsibility for any amounts which may be due to her prior counsel and that she and her former attorney be remitted to appropriate legal remedies for the determination of such an amount. In short, this court will not allow an award of attorney's fee to be made from the husband to the wife over her protest. Although this matter was not raised before the trial justice, we are of the opinion that a party to litigation has the right to waive a benefit at any stage of the proceedings.

## VI

### THE AWARD OF FEES TO THE GUARDIAN AD LITEM AND CONSERVATOR OF ASSETS

 The wife argues that there was no need to appoint either a guardian ad litem or a conservator of assets. An examination of the record in the case (including numerous motions to adjudge both parties in contempt) shows that the trial justice was justified by the actions of the parties in appointing both a guardian ad litem and a conservator. It was next to impossible to rely upon the parties to this action to take even the most rudimentary steps to inform the court concerning their assets or to take the necessary steps to avoid tax sales, to refrain from disposition of personal property in defiance of an order of the court, or to produce any result save contribution to turbulence and chaos. The record is replete with examples of disobedience of orders of the court and contumacious conduct. In order to inform himself of the conditions of custody and to make some contribution toward an orderly cataloguing of properties and encumbrances, as well as to take steps to avoid tax sales, lack of insurance, and the like, it was essential that the court appoint an officer to safeguard the properties and to see that the court's orders were carried out.

The stubbornness and unwillingness either to compromise or to cooperate on the part of the parties to this domestic proceeding have indeed been expensive, not only in fees paid to counsel, but also in additional fees to the guardian ad litem and the conservator as well. For this expense the parties have no one to blame but themselves. Certainly, the trial justice responded properly to the exigencies of the case by making the appointments as he did.

For the reasons stated, the appeals of both parties are denied and dismissed. The interlocutory judgment of the Family Court is affirmed, provided, however, that the judgment will be modified to eliminate the payment of counsel fee by the husband to the former attorney for the wife in accordance with the wife's waiver before this court. The papers in the case may be remanded to the Family Court for entry of a modified judgment in accordance with this opinion.