Concetta V. TARRO

v.

Robert D. TARRO.

No. 81–636–Appeal.

Supreme Court of Rhode Island.

Dec. 20, 1984.

Howard I. Lipsey, Providence, for plaintiff.

John J. Bevilacqua, Providence, for defendant.

## OPINION

MURRAY, Justice.

This case comes before us on appeal from a judgment entered in the Family Court awarding a divorce to the husband on the ground of irreconcilable differences. Cross-appeals have been filed by both the wife and the husband in this action. The wife appeals from the denial of her petition for an absolute divorce on the grounds of adultery, extreme cruelty, and gross misbehavior, and the Family Court's granting of the husband's petition on the ground of irreconcilable differences. She also contests the assignment of marital property, the amount of alimony and child-support awarded, and a setoff against the amount of support arrearages due from the husband. The husband appeals from the award of counsel fees to the wife. We concur with the Family Court justice's findings of fact and affirm the judgment below.

The facts pertinent to this appeal are as follows. Robert D. Tarro (husband) and Concetta V. Tarro (wife) were married on July 11, 1960, and are the parents of six children, four of whom are still minors residing (upon grant of custody in October of 1978) with their mother. The parties separated in May of 1977 after nearly seventeen years of marriage. On November 30, 1977, the wife filed a petition for a divorce on the grounds that the husband had committed adultery and was guilty of gross misbehavior and extreme cruelty. On December 29, 1977, a cross-petition for divorce was filed by the husband on the ground of irreconcilable differences leading to the irremediable breakdown of the marriage.

The wife, upon temporary order, was granted custody of the five (currently four) minor children and was awarded exclusive use of the marital domicile on October 5,

1978.[1] The husband, a physician specializing in otolaryngology (ear, nose, and throat), was ordered to pay $27,500 annually for the wife and children's support[2] in addition to various other expenses.[3] In December of 1978 the husband was adjudged to be in contempt of court for failing to make the required support payments. Although the wife moved again in October of 1980 to have the husband adjudged in contempt, the judge did not see fit to grant the second motion. On October 27, 1980, the husband moved to have the wife adjudged in contempt for refusing to permit him reasonable visitation privileges and for unilaterally withdrawing $12,000 from the joint account.[4] The judge did not grant the husband's motion.

At trial, which commenced on June 18, 1979, and concluded on March 30, 1981, the wife's petition for divorce was denied and the husband's counterpetition on the ground of irreconcilable differences was granted. In working out an equitable distribution of the marital assets, the judge assigned a little more than one-half of the total marital assets, which were valued at $215,281, to the wife. Support payments were set at $300 per week for the children and $150 per week for the wife, the latter to be given for a three-year period only, as a rehabilitative device. Custody of the minor children was awarded to the wife along with the marital domicile, an automobile, and the household furnishings. Medical and dental insurance payments were to be made by the husband for the children and, for a three-year period, for the wife.

The husband was adjudged in contempt for failure to comply with his support obligations and was ordered to pay $17,596.08 in order to rectify the situation. The wife was found to have used the $12,000 from the joint bank account for the children's expenses. Since this bank account had been assigned to the husband as part of the equitable distribution, the judge directed that the $12,000 be setoff against the $17,596.08 support arrearages owed by the husband. In addition, the husband was ordered to pay $12,000 for counsel and witness fees to the wife's attorney.

The decision was filed on November 6, 1981, and both parties filed notices of appeal—the husband on November 23, 1981, and the wife on November 24, 1981.

Three issues are presented to us on appeal. The first issue is whether the trial justice erred in denying the wife's petition for divorce on the grounds of adultery and in granting the husband's cross-petition on the grounds of irreconcilable differences. The second issue is whether the trial justice erred in assigning the marital assets, in awarding alimony, and in permitting a set-off of $12,000 against the support-payment arrearages due. The third issue is whether the trial justice erred in ordering the husband to pay the wife's counsel and witness fees.

The appropriate standard of review in the instant domestic-relations situation is that this court will not disturb the trial justice's findings where he or she has scrupulously considered all of the elements set forth in G.L. 1956 (1981 Reenactment) § 15–5–16.1. *Cok v. Cok,* R.I., 479 A.2d 1184, 1189 (1984). We conclude that the trial justice took the alleged adulterous conduct of the husband into account in arriving at his decision that both parties were responsible for the deterioration of the marriage, in assigning the marital property, and in awarding support payments.

---

**1.** Decree signed September 28, 1978, by Justice Crouchley, filed October 5, 1978.

**2.** This figure was based upon the husband's earnings in 1977 of $76,000.

**3.** Additional payments were mandated for medical expenses, motor vehicles, country-club dues, counsel fees, and various other items.

**4.** According to the decree dated September 28, 1978, a joint bank account containing $12,000 was to be maintained solely for the benefit of the children.

We shall consider the first two issues simultaneously since the statutes that deal with the assignment of property and support payments specifically enumerate "conduct" as a factor to be considered by the court in making its awards.[5]

At the outset, it is important to bear in mind that the term "conduct" as construed by this court has not been equated with the traditional notion of "fault." Rather, "fault" was used synonymously with charges of adultery and misbehavior, and traditionally it was the wife seeking affirmative relief in the form of support from her husband, who bore the brunt of these charges. See cases cited in *Pulawski v. Pulawski*, R.I., 463 A.2d 151, 156–57 (1983). Prior to 1979 the wife's right to alimony was forfeited in the event that she was found guilty of misconduct (adultery), yet no comparable civil sanction was imposed on an adulterous husband. *Fisk v. Fisk*, R.I., 477 A.2d 956, 958 (1984). Today, however, Rhode Island is following the modern trend in adhering to the concept of alimony as a rehabilitative tool based upon need. *Id.* This change is likewise reflected in the modified domestic-relations laws.[6] *Lancellotti v. Lancellotti*, R.I., 481 A.2d 7, 9–10 (1984). As a result, "fault" as such has been largely eliminated as a factor in Rhode Island divorce proceedings and has been replaced by a system of no-fault divorce (in § 15–5–3.1) and by a "fault"-oriented system utilizing the term "conduct" (in § 15–5–16 and § 15–5–16.1), which as stated above is not to be equated with the traditional notion of fault.

In fact, this court has held that a trial justice who denies alimony on the basis of conduct alone has misconceived the nature of conduct under § 15–5–16. *Fisk v. Fisk*, 477 A.2d at 958. "Conduct" is not limited to bad conduct or marital fault but also encompasses good conduct during the term of the marriage. *Id.* Furthermore, a single statutory factor should not control a trial justice's decision. *Id.* Rather, the justice must consider all of the enumerated criteria when awarding spousal support and distributing marital property. *Whited v. Whited*, R.I., 478 A.2d 567, 569–70 (1984).[7]

Upon reviewing the trial justice's findings of fact, we find it clear that he adhered to the requisite duty articulated in *Cok* above by scrupulously considering all of the elements set forth in §§ 15–5–16 and 15–5–16.1. There is not a single statutory element that the trial judge failed to consider; his decision was arrived at only after a thorough and careful analysis of the instant factual situation. Certainly the conduct of both parties, including the alleged misconduct of the husband, was seriously considered by the judge prior to his awarding the husband's cross-petition for divorce on the ground of irreconcilable differences. However, the trial judge reached the conclusion that both parties contributed to the deterioration of the marriage. With this conclusion we agree.

However, the wife claims that her husband's refusal to answer questions about an alleged adulterous relationship, by asserting his Fifth Amendment privilege

---

5. General Laws 1956 (1981 Reenactment) § 15–5–16, entitled "Alimony and Counsel Fees." This section provides in pertinent part that "[i]n determining the amount of alimony or counsel fees, if any, to be paid, the court after hearing the witnesses, if any, of each party, shall consider the length of the marriage; the conduct of the parties during the marriage; * * * and the state and the liabilities and needs of each of the parties."

General Laws 1956 (1981 Reenactment) § 15–5–16.1, entitled "Assignment of Property." This section provides in pertinent part that "[i]n determining the nature and value of property, if any, to be so assigned, the court after hearing the witnesses, if any, of each party, shall consider the length of the marriage, the conduct of the parties during the marriage * * * and the contribution and services of either party as a homemaker."

6. *See* footnote 5. *See also* G.L.1956 (1981 Reenactment) § 15–5–3.1, entitled "Divorce on the Ground of Irreconcilable Differences."

7. *See* footnote 5 for the relevant statutory language and criteria enumerated therein.

against self-incrimination, should have resulted in the trial justice's drawing an adverse inference against the husband and subsequent denial of his cross-petition for divorce on the ground of irreconcilable differences. She bases this contention on our decision in *Pulawski* [8] where we acknowledged that the imposition of sanctions upon a party who seeks affirmative relief and the drawing of adverse inferences against such a party when he refuses to answer relevant questions on self-incrimination grounds are widely accepted in both state and federal courts. See cases cited in *Pulawski v. Pulawski*, 463 A.2d at 156. We further expressed our opinion that this right is grounded in article I, section 13, of the Rhode Island Constitution. *Id.* 463 A.2d at 157. In that decision we held that "[a]lthough a default judgment should not be granted against a defendant purely by reason of his assertion of his privilege against self-incrimination, such refusal may be taken into account in the process of evaluating the evidence presented by a plaintiff or other moving party." *Id.* The

wife here argues by way of analogy that a negative inference should have been drawn against the husband as a result of his refusal, as well as that of his alleged lover, to answer questions regarding an alleged adulterous affair.

Upon reviewing the evidence, we find that the trial justice in the instant case, unlike the trial justice in *Pulawski*, did give the requisite "significant weight" to the husband's refusal to answer certain questions regarding an alleged affair, particularly in light of the fact that, unlike the party asserting this privilege in *Pulawski* who remained completely silent, he did answer at least some questions regarding his alleged affair. In addition, there is no indication that the trial judge did not consider the "conduct" of the parties in determining the support award and in distributing the marital assets as required by §§ 15–5–16 and 15–5–16.1. In fact, the wife received slightly more than 50 percent of the marital assets, indicating an equitable treatment of the situation and a reasonable support award.[9]

8. The facts of *Pulawski v. Pulawski*, R.I., 463 A.2d 151 (1983), are as follows. In *Pulawski* the Family Court justice awarded a divorce to each of the parties on the ground of irreconcilable differences. The husband brought an action against his wife seeking a divorce on the ground of gross misbehavior and wickedness repugnant to and in violation of the marriage covenant. The wife filed a cross-petition for divorce against her husband on the ground of irreconcilable differences. At trial, the husband attempted to examine both his wife and her alleged lover; however, both refused to answer questions, relying upon the Fifth Amendment privilege against self-incrimination. In addition, the trial judge excluded recordings (of telephone conversations between the wife and the alleged lover) on the ground that the evidence had been obtained in violation of 18 U.S.C.A. § 2511 (1970). The husband argued that: (1) the recorded conversations should have been admitted into evidence because the sole testimony in the record regarding such conversations and their interception was given by the husband and (2) the wife consented to the recording of the calls. Indeed, the record disclosed that the trial judge acknowledged the wife's consent to the recordings. Consequently, although the trial justice did not reject the husband's testimony or give any reason for disregarding it, he nevertheless made a finding that the evidence was

inadmissible even though the only testimony before him indicated that the wife had given her consent. We concluded that the trial justice erred in ignoring uncontradicted evidence without giving a specific reason for his rejection thereof.

9. The record discloses that the wife was awarded $150 per week as rehabilitative alimony for a period of three years and her children were awarded $300 per week as child support. The trial justice found that the wife was in her early forties, had two college degrees, was trained as a teacher, had held a real estate license, and possessed a certificate in title searching from Johnson and Wales Business College. Thus, his rehabilitative support award was well founded and it does not appear unreasonable to conclude that the wife would be able to find suitable employment within the three years for which support was awarded. Should this not prove to be the case, however, the Family Court retains jurisdiction to modify the prior decree upon a proper showing. *Bocchino v. Bocchino*, R.I., 464 A.2d 715 (1983). The trial justice's treatment is consistent with this court's view that "[a]limony in its modern form [is] a rehabilitative tool designed to provide support for an ex-spouse based on need." *D'Agostino v. D'Agostino*, R.I., 463 A.2d 200, 202 (1983).

In addition, it is important to distinguish factually the *Pulawski* situation from the instant situation. In *Pulawski*, it was the wife who sought three forms of relief: a divorce on the grounds of irreconcilable differences by way of cross-petition, alimony, and a share in the distribution of the marital assets. In that case, it was likewise the wife who asserted her self-incrimination privilege when questioned about alleged adulterous conduct. In that decision we held that the trial justice's neglect to draw even the slightest inference against her was prejudicial error.

In the case at bar, it was the husband who, like the wife in *Pulawski*, sought by way of cross-petition a divorce on the ground of irreconcilable differences and asserted his self-incrimination privilege when questioned about alleged adulterous conduct. However, unlike the wife in *Pulawski*, he did not seek the other two forms of relief, that is, alimony or a share in the marital assets. Rather, his wife sought the latter two monetary benefits and was successful. In addition, the husband did answer some questions concerning an alleged affair, unlike the wife in *Pulawski*, who completely refused to testify about the subject.

It is obvious that we are not addressing the same factual situation here that we addressed in *Pulawski*. Thus, although aspects of the reasoning and conclusions drawn in that case are relevant here, they are certainly not controlling. In *Pulawski* we merely expressed our opinion that the refusal of the wife (the party seeking all three marital benefits) to answer questions about her alleged adulterous conduct "should have been given significant weight in determining her entitlement to affirmative relief." *Pulawski*, 463 A.2d at 157. As stated above, we held that the trial justice's neglect to draw even the slightest inference against her was prejudicial error. *Id.* Thus, we implied that *negative* action

by the court (e.g., summary denial) may be warranted against a party seeking affirmative relief (e.g., a cross-petition for divorce, alimony, and division of marital property) who refuses to testify on self-incrimination grounds. Nowhere in that decision did we state or otherwise intend to suggest that the other spouse, who is trying to cross examine the party remaining silent, is automatically entitled to such *positive* court action as a larger alimony award or a larger share of the marital assets simply as a result of the other spouse's refusal to answer; we merely stated that negative action may be merited against the silent party.[10] Furthermore, nowhere in *Pulawski* do we state that negative inferences, or action, *must* be drawn, or taken, against the party asserting the privilege by the trial justice in these situations. Rather, we merely state that the failure of a trial justice to draw such adverse inferences *may*, in circumstances factually equivalent to those involved in *Pulawski*, result in prejudicial error and a new trial.

A final distinction between the *Pulawski* decision and the instant case is that the trial justice in *Pulawski* excluded uncontradicted evidence (the tape-recorded telephone conversations between the wife and her alleged lover) without giving a specific reason for rejecting it. *Pulawski*, 463 A.2d at 154. Nowhere in the record of the instant case is it indicated that the trial justice similarly excluded any uncontradicted evidence.

The *Pulawski* decision, insofar as it stands for the proposition that refusal to testify should be given significant weight in determining entitlement to affirmative relief, is controlling in the instant situation. Since we find that the trial justice did give the husband's behavior significant weight in granting his cross-petition for divorce on the ground of irreconcilable differences, we find it unnecessary to reverse his decision.

**10.** Thus, any suggestion by the wife in the instant case that the *Pulawski* decision stands for such an entitlement on her behalf is unfounded. Furthermore, the wife here did obtain a reasonable support award for herself and her children and slightly more than one-half of the marital assets, which award we find unnecessary to disturb after a careful review of the evidence.

In *Pulawski,* we concluded that the *total* lack of cross-examination of the wife and her alleged lover regarding her conduct, in conjunction with the trial justice's neglect to draw the "slightest inference against her" even though she refused to testify at trial on self-incrimination grounds, resulted in prejudicial error. *Id.* 463 A.2d at 157.

Relying upon the distinctions articulated above, we simply do not find evidence of prejudicial error in the instant situation. The trial justice thoroughly reviewed the evidence, concluded that both parties were at fault, awarded alimony, divided the marital property in an equitable fashion, and permitted a setoff of $12,000 against the support arrearages due.[11] There is no indication that the trial justice did not give significant weight to the husband's refusal to answer some questions regarding an alleged affair nor that this factor (conduct) was not integrated into his subsequent division of the marital assets, alimony award, and his decision to grant the husband's cross-petition for divorce on the ground of irreconcilable differences. Evidently, the trial justice found that both parties were at fault. The comment of a New York court is apropos: "[F]ault is very difficult to evaluate in the context of a marriage and may, in the last analysis, be traceable to the conduct of both parties." *Blickstein v. Blickstein,* 99 A.D.2d 287, 292, 472 N.Y. S.2d 110, 113 (1984). Since "the trial justice thoroughly discussed the salient facts and applied those facts to the appropriate statutes in reaching well-reasoned conclusions[,]" *Whited v. Whited,* R.I., 478 A.2d 567, 570 (1984), we find it unnecessary to disturb his results.

The final issue presented on appeal is whether the trial justice erred in ordering the husband to pay the wife's counsel and witness fees.

By statute, the Family Court may, in appropriate cases, order the husband to pay counsel fees as the court thinks "reasonable and proper." *Paradiso v. Paradiso,* 122 R.I. 1, 3, 404 A.2d 60, 61 (1979). We have also stated that "before the trial justice is warranted in making such an award, he must find that the husband had a sufficient financial ability to pay such fees and that the wife is without property of her own available for that purpose." *Id.* at 3–4, 404 A.2d at 61 (quoting *Hull v. Hull,* 120 R.I. 77, 81, 384 A.2d 1065, 1067 (1978)). Here such findings were made. The husband is a physician earning in the neighborhood of $100,000 per year.[12] In addition, he has a one-third interest in a successful professional corporation in which he practices with two other physicians. The wife, on the other hand, had no property of her own from which to make such a payment prior to the assignment of the marital property, which, in her case, consisted largely of the marital domicile and its furnishings, a nonliquid asset. It is obvious that the trial justice's findings here warranted the conclusion that the husband had the financial resources necessary to pay the wife's counsel fees.

We conclude that the trial justice did not err in determining that both parties were responsible for the deterioration of the marriage and in granting the husband's cross-petition for divorce on the ground of irreconcilable differences, nor did he abuse his discretion in assigning the marital property, in awarding alimony, or in ordering the defendant husband to pay counsel fees incurred by the plaintiff wife. It is well settled that the findings of a trial justice

---

11. The wife claims that it was error for the trial justice to have included the $12,000 bank account that was set aside for the children among the marital assets and that the error was compounded when the fund was assigned to the husband and subsequently set off against his support-payment arrearages of $17,596.08. Clearly, the joint bank account was a marital asset (as established in paragraph 2 of the September 28, 1978 decree), and the trial judge chose in his discretion to assign it to the husband in dividing the marital assets. Since it was property used for the benefit of the children, we find that it was not error to set it off against the support arrearages.

12. According to the 1981 decision, his earnings during 1980 were $95,224.

sitting without a jury are entitled to great weight and will not be disturbed by this court on appeal unless it can be shown that such findings are clearly wrong or that the trial justice misconceived or overlooked material evidence. *Raheb v. Lemenski,* 115 R.I. 576, 350 A.2d 397 (1976). This exact same standard of review has been applied in the area of domestic relations and specifically in divorce cases. *See Wordell v. Wordell,* R.I., 470 A.2d 665 (1984).

Since the trial justice acted properly with regard to the findings and the evidence, we find that no prejudicial error has been committed. Therefore, we affirm the decision below and dismiss the appeals of both parties.

BEVILACQUA, C.J., did not participate.