413 A.2d 55.

ROBERT J. CARTER *vs.* ARLENE C. CARTER.

MARCH 19, 1980.

PRESENT: Bevilacqua, C.J., Kelleher, Doris and Weisberger, JJ.

KELLEHER, J.  Robert and Arlene Carter were married in Providence, Rhode Island, on May 12, 1941, and are the parents of four adult sons. Robert and Arlene lived together as husband and wife until mid-1975. On June 19 of that year, Robert filed a petition for divorce in which he alleged that Arlene had been guilty of extreme cruelty toward him, that she had been guilty of drunkenness affecting the family life, and that their irreconcilable differences had caused the irremediable breakdown of the marriage. The cruelty and drunkenness grounds were abandoned, however, and the divorce was granted on July 29, 1977, on the ground of irreconcilable differences. Robert is now before us on his appeal from that portion of the interlocutory divorce decree that awarded alimony to Arlene.

The record that is before us presents a disturbing marital picture in which Arlene's dependence on alcohol increased to the point that she became unable to care for herself or her family. Throughout this controversy Robert has consistently contended that Arlene's alcoholic overindulgences barred the award of any alimony to her. This contention necessitates a review of what has transpired legislatively since the General Assembly first established "irreconcilable differences" as a ground for divorce.

"Irreconcilable differences" first appeared on the statute books when the Legislature at its January 1975 session adopted P.L. 1975, ch. 287, sec. 1, now cited as G.L. 1956 (1969 Reenactment) §15-5-3.1. The act became effective on May 22, 1975, and less than a month later Robert instituted these proceedings. The 1975 amendment authorized the Family Court to "make provision for alimony." A year later, the Legislature, with its enactment of P.L. 1976, ch. 294, repealed §15-5-3.1 and substituted a revised version. The 1976 amendment retained "irreconcilable differences" as a ground for divorce but specifically stated that evidence or allegations of specific acts of misconduct "shall be improper and inadmissable, except for the purpose of determining a party's entitlement to an award of alimony, in which the fault of * * * [the] party seeking alimony shall be relevant * * *."

In his appeal, Robert claims that the 1976 amendment absolutely precludes an award of alimony to a spouse whose actions amount to misconduct. He also claims that, as a matter of law, Arlene's admitted overindulgence in alcohol bars a grant of alimony even though the trial justice failed to make a specific finding as to how he characterized this fact of Arlene's behavior. We would go on and consider this contention except that while this appeal was pending here, the General Assembly made further substantial changes to various portions of chapter 5 of title 15, including §15-5-3.1. At its January 1979 session, the Legislature enacted P.L. 1979, ch. 279,[1] so that today §15-5-3.1 contains no reference whatso-

---

[1]*See* Appendix.

ever to the fault of a party seeking alimony as being relevant. Instead, fault, according to the new statute, is relevant for "making a determination pursuant to sections 15-5-16 and 15-5-16.1 of the general laws * * *."

Section 15-5-16 now sets forth several criteria for the court to consider as it awards alimony or counsel fees. Specifically, §15-5-16 lists a variety of factors a trial justice "shall consider" including the length of the marriage; the conduct of the parties during the marriage; the health, age, station, occupation, amount and source of income, vocational skills, and employability of the parties; and the estate and liabilities and needs of each party. Section 15-5-16.1 allows the Family Court to assign to either the husband or the wife a "portion of the estate of the other." One criterion listed in the statute as being relevant to such an assignment is the conduct of the parties during the marriage.

The enactment clause of the 1979 amendment expressly stated that the amended version of chapter 5 of title 15 was to be applied "to all petitions pending on the date of passage of this act and to all petitions filed thereafter." In *Zaharakos* v. *Zaharakos*, 118 R.I. 387, 374 A.2d 101 (1977), this court, in the light of similar language contained in a 1976 amendment, applied the law as it was at the time of the appellate decision rather than the one that was in effect at the time judgment was made. There is no reason to do otherwise here.

Consequently, we shall remand the case so that the trial justice can make the requisite findings concerning fault and the other criteria listed in §15-5-16, especially in regard to whether he considered Arlene's addiction in the category of fault or illness and, if it is in the category of fault, whether Robert's purchases of alcohol contributed in any manner to Arlene's present debilitated condition.

There is a second facet to Robert's appeal that should be considered. This facet merits consideration particularly if the trial justice, after remand, believes that Arlene qualifies for an alimony award. The alimony awarded consisted of an $80 weekly payment until the marital domicile was sold. There-

after, the weekly award would be $100. Robert claims that the amounts are totally unjustified. His contention is better understood after a brief recitation of the travel of this case through the Family Court.

Robert began offering testimony in support of his contentions on June 21, 1976. His presentation continued for several days thereafter with the testimony finally concluding late in April 1977. On October 8, 1976, however, the day's hearing was devoted to considering Arlene's motion for a temporary weekly allowance. After Arlene's counsel had told the trial justice that an emergency situation had arisen because his client was unable to take care of herself, the trial justice agreed to listen to testimony from Arlene's niece.

The niece, after describing conditions in the marital domicile that supported counsel's claim of emergency, told the trial justice that if some type of allowance were provided, she was agreeable to taking Arlene into her home and providing her aunt with food, care, lodging, and spending money. When the trial justice asked the niece how much in the way of monetary compensation she would need to afford those services, the niece estimated between $75 and $100 a week. When, during cross-examination, Robert's counsel began to press the niece about the basis of her cost estimates, the trial justice reminded counsel that any decision concerning Arlene's motion would result in a "temporary order." He assured counsel that when the hearing on the merits resumed and the alimony issue was before him, counsel could "go into it fully." Accordingly, he ordered Robert to pay the niece the sum of $80 a week for the specific purposes previously enumerated.

After the hearing on the merits resumed, time marched on, and on April 21, 1977, during a colloquy with counsel, the trial justice apparently reiterated his position by saying:

> "I think there might have been some complaint that she wasn't receiving anything, so we decided at that time to at least hear the matter of her needs and his ability on a *temporary* basis during the trial of the case and I think that's what we did." (Emphasis added.)

Despite this statement, the trial justice subsequently decided that he had "taken all the hearings as being part of the hearing on the merits." Robert's counsel, in a fruitless attempt to explain his understanding of the court's position regarding Arlene's support, unequivocally stated: "[T]here was nothing said, according to my recollection or notes that * * * [the hearing on allowances] would be taken as the testimony on the merits." Unconvinced, the trial justice noted Robert's objection and suggested that Robert had not been prejudiced. In reply, Robert's counsel argued that the hearing on the merits of the divorce petition was devoid of testimony regarding Arlene's needs or income. We agree. Although the trial justice's efforts to avoid duplication may be laudatory, his determination regarding the amount of the permanent award of alimony cannot stand in light of his assurance that this issue would be explored fully once the emergency situation had been resolved.

Robert's appeal is sustained, that portion of the decree appealed from relating to the alimony award is vacated, and the case is remanded to the Family Court for further proceedings consistent with this opinion.

## Appendix

Prior the the Legislature's 1979 session, §15-5-16 served as the Family Court's source of power to make appropriate orders in a divorce proceeding on issues concerning custody and child support. Shortly after the Legislature convened on January 12, 1979, Representative Marion H. Donnelly and several of her colleagues introduced a bill which sought to repeal §15-5-16 and in its place substitute a new §15-5-16 which would authorize the award of alimony and counsel fees to either party. Later, on March 14 Senator James Costello introduced a bill which would have amended the then §15-5-16 so that the noncustodial natural parent would be granted reasonable visitation rights with his or her child. Both bills made their way through the legislative process. The House bill became law on May 7 when the Governor signed it, and the bill was subsequently designated by the Secretary of State as P.L. 1979, ch. 279. The Senate bill be-

came law on May 11 without the Governor's signature. The Secretary of State designated it as P.L. 1979, ch. 338. It is obvious that when ch. 338 became effective, the §15-5-16 that it sought to amend was no longer the law. This confusing situation has been duly noted by the compilers of the General Laws. We shall resolve the confusion by construing both 1979 enactments in such a manner that §15-5-16 includes the alimony and counsel-fee provisos of ch. 279 as well as the noncustodial-natural-parent-visitation guarantees found in ch. 338.

*Kirshenbaum Law Offices, Inc., Allen M. Kirshenbaum,* for petitioner.

*F. Albert Starr,* for respondent.