Walter J. PULAWSKI

v.

Patricia A. PULAWSKI.

No. 80-497-Appeal.

Supreme Court of Rhode Island.

July 15, 1983.

William Y. Chaika, Cranston, Alfred Factor, Providence, for plaintiff.

Joseph E. Marran, Jr., Pawtucket, for defendant.

## OPINION

WEISBERGER, Justice.

This case comes before us on appeal from a judgment entered in the Family Court awarding a divorce to each of the parties on the ground of irreconcilable differences. The court determined the custody of the parties' minor children and awarded the wife alimony, support for the minor children, counsel fees, and a portion of the husband's property amounting to approximately 50 percent of his total assets, including retained earnings in a corporation of which he was the sole stockholder. In support of his appeal the husband raises four issues. In light of our determination relating to the first three issues, it will be unnecessary for us to reach the fourth. We reverse. The facts pertinent to this appeal are as follows.

Walter J. Pulawski (husband) and Patricia A. Pulawski (wife) were married December 29, 1965, and are the parents of two minor children. The parties had an uneventful marriage until approximately November 1978 when the husband began to suspect his wife of committing adultery with a man who had long been a friend, adviser, and attorney to both parties. Pursuant to these suspicions, the husband confronted the wife on a number of occasions and arranged to have a recording device placed upon the domestic telephone of the parties in order that he might record conversations of a romantic nature between his wife and her alleged lover. As a result of the husband's investigations and apparently relying in part upon the tape recordings, the husband brought action against his wife, seeking a divorce on the ground of gross misbehavior and wickedness repugnant to and in violation of the marriage covenant. The wife filed a cross-petition for divorce against her husband on the ground of irreconcilable differences. At the trial, the husband examined his wife as an adverse witness and attempted to examine her alleged lover in the same manner. Both refused to answer questions and asserted as ground therefore their privilege against self-incrimination as guaranteed by the Fifth Amendment to the Constitution of the United States made applicable to the states through the due-process clause of the Fourteenth Amendment. *Malloy v. Hogan,* 378 U.S. 1, 84 S.Ct. 1489, 12 L.Ed.2d 653 (1964). The husband then attempted to introduce recorded conversations between the wife and her alleged lover but was prevented from doing so by the trial justice on the ground that such evidence had been obtained in violation of 18 U.S.C.A. § 2511 (1970). This section was originally promulgated as part of the Omnibus Crime Control and Safe Streets Act of 1968, which makes it unlawful for a person whether acting under color of law or otherwise, to intercept any wire or oral communication without the consent of one of the parties to such conver-

sation. Specifically, § 2511(2)(d) reads as follows:

"It shall not be unlawful under this chapter for a person not acting under color of law to intercept a wire or oral communication where such person is a party to the communication or where one of the parties to the communication has given prior consent to such interception unless such communication is intercepted for the purpose of committing any criminal or tortious act * * *."

The husband argues that he should have been allowed to introduce the recorded telephone conversations because the sole testimony in the record regarding such conversations and their interception was given by the husband. Furthermore, he clearly and unequivocally asserted that the wife had consented to the recording of their telephone calls. Indeed, the record discloses that the trial justice in the course of a colloquy with counsel stated:

The Court: "Well, so far, what I have, is she's agreed to having the tapes, the telephone calls taped—"

Counsel: "That's only his statement."

The Court: "I know it's his statement, but that's all I have got. Until she denies it, I've got nothing else."

Although the wife did not take the stand to deny her husband's testimony and although there was no other testimony offered concerning consent, or lack thereof, the trial justice excluded the recordings from evidence and would not even permit an offer of proof to establish their relevance and materiality.

■ Consequently, although the trial justice did not reject the husband's testimony or give any reason for disregarding it, he nevertheless made a finding that the evidence was inadmissible, even though the only testimony before him indicated that the wife had given her consent to such interception. We are of the opinion that the trial justice erred in ignoring uncontradicted evidence without giving a specific reason for his rejection thereof. *See Milliken v. Milliken,* 120 R.I. 762, 390 A.2d 934

(1978); *Beaupre v. Dynachem Corp.,* 113 R.I. 612, 324 A.2d 621 (1974); *Peloso v. Peloso, Inc.,* 107 R.I. 365, 267 A.2d 717 (1970).

In light of the fact that the trial justice refused to allow an offer of proof in respect to relevancy, we shall assume, without deciding, that these conversations would have been relevant and probative in support of the husband's petition for divorce. Further, since the determination of the factual question of consent goes to the very heart of the trial justice's ruling on admissibility, we are of the opinion that he was clearly wrong in making a factual finding that was directly in contradiction of the only evidence presented on that issue by either party.

■ The second issue raised by the husband is the refusal on the part of the trial justice to allow the husband to use the technique of cross-examination in questioning the wife's alleged lover, the wife's mother, and two friends. An examination of the record in this case would indicate very clearly that the wife's alleged lover and her mother were undeniably in a posture that was hostile to the interests of the husband. General Laws 1956 (1969 Reenactment) § 9–17–14 provides inter alia that "[a]ny other person whose interest is adverse to the party calling him, may be examined as if under cross-examination."

This provision parallels the terms of Domestic Relations Rule 43(b), which provides for the calling of an adverse party and the interrogation of such party by leading questions: This rule, which has now been adopted by the Family Court, further provides that a party may interrogate any unwilling or hostile witness by leading questions. Regardless of whether one applies § 9–17–14 or Rule 43(b) as presently adopted by the Family Court, it seems apparent that to hold that the wife's alleged lover, who had refused to answer questions on the ground of self-incrimination concerning his relationship to the wife, was not hostile or adverse is to close one's eyes completely to

reality. Although the hostility of the wife's mother was not so apparent, we believe that on balance the technique of cross-examination should have been allowed in respect to her as well. *See Puccio v. Diamond Hill Ski Area, Inc.,* 120 R.I. 28, 385 A.2d 650 (1978). Regarding the two friends, the record does not disclose a sufficient basis for a determination of hostility or adversity in respect to them. Consequently, in regard to the alleged lover and the wife's mother, the trial justice's refusal to allow cross-examination was in error. We shall not disturb his ruling in respect to the two friends.

The third issue raised by the husband relates to the failure on the part of the trial justice to impose any sanction upon the wife because of her assertion of her Fifth Amendment privilege against self-incrimination. The husband argues that by seeking affirmative relief, including alimony and equitable distribution of her husband's assets, the wife placed her conduct in issue. *Carter v. Carter,* R.I., 413 A.2d 55 (1980). He asserts that the award of alimony, as well as the equitable distribution of property, is made contingent upon several factors, including "the conduct of the parties during the marriage * * *." General Laws 1956 (1969 Reenactment) §§ 15–5–16 and 15–5–16.1, as enacted by P.L. 1979, ch 279, § 2.

■ There is no question that a party to a civil action may claim the benefit of the privilege against self-incrimination. *See Arndstein v. McCarthy,* 254 U.S. 71, 41 S.Ct. 26, 65 L.Ed. 138 (1920). However, a witness who voluntarily takes the stand in a civil case has been held to waive the privilege against self-incrimination in respect to cross-examination that is relevant to the issues raised by such testimony. *Brown v. United States,* 356 U.S. 148, 78 S.Ct. 622, 2 L.Ed.2d 589 (1958).

In enunciating the principles related to the voluntary testimony by a witness in a civil case, Mr. Justice Frankfurter observed:

"Such a witness has the choice, after weighing the advantage of the privilege against self-incrimination against the advantage of putting forward his version of the facts and his reliability as a witness, not to testify at all. He cannot reasonably claim that the Fifth Amendment gives him not only this choice but, if he elects to testify, an immunity from cross-examination on the matters he has himself put in dispute. It would make of the Fifth Amendment not only a humane safeguard against judicially coerced self-disclosure but a positive invitation to mutilate the truth a party offers to tell." 356 U.S. at 155–56, 78 S.Ct. at 627, 2 L.Ed.2d at 597.

■ In the case at bar the wife took the stand during her case-in-chief only in order to subject herself to cross-examination concerning her entitlement to alimony and equitable distribution of the marital assets. The wife was allowed to introduce an affidavit setting forth her expenses. The trial justice limited cross-examination solely to a list of expenses and to the financial inferences that might be drawn therefrom. Such a limitation of cross-examination was in derogation of the husband's right to cross-examine on the relevant issue of conduct or fault. The wife could not seek financial relief and at the same time preclude her husband from examining on other matters that were relevant to that relief.

The wife argues that no sanctions should be imposed upon her or inferences drawn against her as a result of her assertion of her privilege against self-incrimination and cites in support of this proposition, *Garrity v. New Jersey,* 385 U.S. 493, 87 S.Ct. 616, 17 L.Ed.2d 562 (1967), and *Spevack v. Klein,* 385 U.S. 511, 87 S.Ct. 625, 17 L.Ed.2d 574 (1967). She might also have cited *Gardner v. Broderick,* 392 U.S. 273, 88 S.Ct. 1913, 20 L.Ed.2d 1082 (1968). All of the foregoing cases related to the imposition of direct sanctions upon a party for asserting his privilege against self-incrimination. In *Spevack,* a lawyer was disbarred as a result of his refusing on self-incrimination grounds to answer questions relating to professional misconduct. In *Garrity,* a police officer was threatened with discharge if he refused to answer questions concerning

ticket fixing. The coerced answers to these questions were held to be inadmissible in a criminal case. In *Gardner,* it was held that a provision of the New York City charter which required discharge of a police officer who refused to answer questions concerning bribery and corruption on grounds of self-incrimination was constitutionally infirm. All of the foregoing cases related to litigation between a governmental agency and a private party.

In *Mahne v. Mahne,* 66 N.J. 53, 328 A.2d 225 (1974), the Supreme Court of New Jersey considered a similar problem arising out of the refusal of a wife to answer questions concerning her alleged adulterous conduct. The court distinguished such a situation from those in *Gardner, Garrity* and *Spevack,* observing that these cases did not arise in the context of private litigation between private parties in which noncriminal sanctions are sought to be imposed in aid of orderly pretrial discovery or in respect to testimony in a civil action. A number of cases have held that a plaintiff in a civil action who refuses to testify even in pretrial discovery on grounds of self-incrimination may be subject to the dismissal of his action or to some lesser noncriminal sanction. *See Christenson v. Christenson,* 281 Minn. 507, 162 N.W.2d 194 (1968); *Franklin v. Franklin,* 365 Mo. 442, 283 S.W.2d 483 (1955); *Levine v. Bornstein,* 13 Misc.2d 161, 174 N.Y.S.2d 574 (Sup.Ct.1958), *aff'd* 7 A.D.2d 995, 183 N.Y.S.2d 868, *aff'd* 6 N.Y.2d 892, 160 N.E.2d 921, 190 N.Y.S.2d 702 (1959).

In *Mahne v. Mahne, supra,* the court suggested that in instances when parties refuse to answer questions in pretrial discovery on self-incrimination grounds, a trial court should seek a proper balance. It was held that the striking out of a defendant's pleadings was too severe a sanction to be imposed upon the assertion of the privilege of self-incrimination but that the imposition of a sanction in respect to her counterclaim might well be appropriate in the event that further proceedings disclosed the necessity

therefor. *Mahne,* 66 N.J. at 61–62, 328 A.2d at 229.

■ It appears to be the general rule that an inference may be drawn against a party in a civil case who declines to answer questions or to testify in a civil case. This rule has been recognized with apparent approval by the Supreme Court of the United States in *Baxter v. Palmigiano,* 425 U.S. 308, 96 S.Ct. 1551, 47 L.Ed.2d 810 (1976), in which Mr. Justice White observed on behalf of a majority of the Court:

> "Our conclusion is consistent with the prevailing rule that the Fifth Amendment does not forbid adverse inferences against parties to civil actions when they refuse to testify in response to probative evidence offered against them: the Amendment 'does not preclude the inference where the privilege is claimed by a party to a *civil cause.*' 8 J. Wigmore Evidence, 439 (McNaughton rev. 1961)." 425 U.S. at 318, 96 S.Ct. at 1558, 47 L.Ed.2d at 821.

This rule was again cited with approval by the Court in *Lefkowitz v. Cunningham,* 431 U.S. 801, 808 n. 5, 97 S.Ct. 2132, 2137 n. 5, 53 L.Ed.2d 1, 9 n. 5 (1977).

It thus appears that the imposition of sanctions upon a party who seeks affirmative relief and the drawing of adverse inferences against such a party when he refuses to answer relevant questions on self-incrimination grounds are widely accepted in both state and federal courts. *See, e.g., Duffy v. Currier,* 291 F.Supp. 810 (D.Minn.1968); *Rubenstein v. Kleven,* 150 F.Supp. 47 (D.Mass.1957); *Kaye v. Newhall,* 356 Mass. 300, 249 N.E.2d 583 (1969); *Duratron Corp. v. Republic Stuyvesant Corp.,* 95 N.J.Super. 527, 231 A.2d 854 (App.Div.), *certif. den.,* 50 N.J. 404, 235 A.2d 897 (1967). *See generally* Kaminsky, *Preventing Unfair Use of the Privilege Against Self-Incrimination in Private Civil Litigation: A Critical Analysis,* 39 Brooklyn L.Rev. 121 (1972); Commentary, *Penalizing the Civil Litigant Who Invokes the Privilege Against Self-Incrimination,* 24 U.Fla.L.Rev. 541 (1972); Note, *Use of the Privilege Against Self-Incrimination in Civil Litigation,* 52 Va.L.Rev. 322 (1966).

An example of such sanctions may be provided by the action of the Supreme Court of Minnesota in *Christenson v. Christenson, supra,* in which the court required the dismissal of a divorce petition when the plaintiff wife refused to waive her privilege against self-incrimination. In issuing a peremptory writ of mandamus requiring dismissal, the court specified "[w]hile plaintiff cannot be compelled to waive her privilege against self-incrimination in this divorce action, as in any other civil action, she must either waive it or have her action dismissed." 281 Minn. at 524, 162 N.W.2d at 204.

To the same effect has been the consistent policy of the Supreme Court of Florida, which precluded a plaintiff in a divorce action from further prosecution upon refusal to answer requests for admissions relating to an affirmative defense of adultery. *Stockham v. Stockham,* 168 So.2d 320 (Fla. 1964). This principle was reaffirmed in *Minor v. Minor,* 240 So.2d 301 (Fla.1970), after a review of *Spevack* and *Garrity.* In the latter case the Supreme Court of Florida again imposed the sanction of dismissal of her petition on a plaintiff who refused to answer questions in a pretrial deposition relating to a husband's counterclaim of adultery.

■ We are of the opinion that the imposition of sanctions in a civil action upon one who refuses to answer questions relating to the subject matter in issue on the ground of self-incrimination is not a violation of any right guaranteed by the Fifth Amendment to the Constitution of the United States or article I, section 13 of the Rhode Island Constitution. Although a default judgment should not be granted against a defendant purely by reason of his assertion of his privilege against self-in-

crimination, such refusal may be taken into account in the process of evaluating the evidence presented by a plaintiff or other moving party.

■ A fortiori, one who seeks affirmative relief by way of counterclaim, cross-petition, or otherwise, may appropriately be subjected to the sanction of dismissal of such claim for affirmative relief when he or she refuses to answer questions in discovery or at trial which are relevant and material to the issues presented. When the court deals with private litigants, the privilege against self-incrimination must be weighed against the right of the other party to due process and a fair trial. The shield of the privilege must not be converted into a sword. *See Brown v. United States, supra.*

■ In the case at bar, we believe that the granting of affirmative relief to the wife without permitting her to be cross-examined in respect to her conduct and without drawing the slightest inference against her even though she refused at trial to testify on self-incrimination grounds was prejudicial error. We need not at this time determine whether her cross-petition and claim for alimony and distribution of assets should have been summarily denied by reason of her assertion of the privilege. We do express the opinion that such refusal should have been given significant weight in determining her entitlement to such affirmative relief. We conclude that under the circumstances the husband is entitled to a new trial at which the examination of witnesses and the findings of fact will be carried out in accordance with the principles enunciated in this opinion.[1]

For the reasons stated, the appeal of the husband is sustained, the judgment of the Family Court is vacated, and the case is

1. Although this issue has not been specifically argued by the parties, the transcript discloses that the trial justice uncritically accepted the assertion of the privilege against self-incrimination in many instances when it was perfectly clear that the answers could not "furnish a link in a chain of evidence" that might be utilized in order to prosecute the witness for criminal con-

duct. *Malloy v. Hogan,* 378 U.S. 1, 11, 84 S.Ct. 1489, 1495, 12 L.Ed.2d 653, 661 (1964). Upon remand, the trial justice should be prepared to "make a determination of whether relevant questions could have a reasonable possibility of establishing the hazard of incrimination." *State v. Pari,* R.I., 430 A.2d 429, 432 (1981).

remanded to the Family Court for a new trial on all issues.