**TREND PRECIOUS METALS COMPANY, INC.**

v.

**SAMMARTINO, INC., et al.**

**No. 89–251–Appeal.**

Supreme Court of Rhode Island.

July 12, 1990.

Richard C. Bicki, John A. MacFayden, III, Providence, for plaintiff.

John P. Gyorgy, Adler, Pollock & Sheehan, Providence, for defendants.

OPINION

FAY, Chief Justice.

The plaintiff, Trend Precious Metals Company, Inc. (Trend), is before this court appealing both the Superior Court dismissal of its claim against the defendant Sammartino, Inc. (Sammartino) and an adverse grant of summary judgment in favor of the defendant/intervenor Shawmut Bank, N.A. (Shawmut). We reverse.

Trend initiated this action in the Superior Court seeking a judgment discharging mortgages and financing statements held by Sammartino. Trend claimed that in December 1986 Sammartino lent Trend $200,-

000 secured by certain real estate located in Cranston, Rhode Island, and Seekonk, Massachusetts. According to Trend, this debt was satisfied in full, yet it was unsuccessful in its request of Sammartino that it discharge the mortgage and U.C.C. filings. The Superior Court action ensued. Pursuant to Rule 24 of the Superior Court Rules of Civil Procedure, Shawmut moved to intervene in the action instituted against Sammartino, claiming that Sammartino had defaulted on its loan obligations and that Shawmut, as the assignee of Sammartino's accounts receivable, had a direct interest in defending the action. The trial justice granted Shawmut's motion to intervene, and Shawmut assumed primarily the role of defending Trend's action against Sammartino.

In response to Trend's complaint, Shawmut tendered an answer denying that Trend's financial obligations to Sammartino had been fulfilled. Shawmut also counterclaimed, asserting that Trend had an outstanding balance of $2,198,142.03 now due Shawmut as the holder of Sammartino's accounts receivable. Subsequent discovery in this case, however, was hindered because of the existence of a contemporaneous Federal District Court action in which both Sammartino's principal, Walter F. Sammartino, and Trend's principal, Stephen Saccoccia, were involved. Both principals invoked their Fifth Amendment rights against compelled self-incrimination under the United States Constitution. Walter Sammartino was deposed in this action and revealed nothing more than his name and address. Stephen Saccoccia presented deposition testimony in the related Federal case of *Putnam Resources Limited Partnership v. Sammartino, Inc.*, C.A. No. 87–0414B (United States District Court), and the parties stipulated that this testimony was deemed responsive to the deposition notice in the present action. Saccoccia provided only his name and address at that deposition.

The lack of testimony from the two principals forced the parties to rely upon deposition testimony from C. Leonard O'Brien (O'Brien), appointed at a shareholders' meeting in August 1988 as Trend's "attorney," and Elizabeth Theresa Volpe (Volpe), a longstanding employee of Sammartino. O'Brien responded to a deposition notice directed to an "officer, employee or shareholder of Trend Precious Metals." Trend retained O'Brien to represent its interest in the discharge of mortgages on certain parcels of Trend's property. Regarding Trend's claim against Sammartino, O'Brien testified that he possessed the requisite knowledge to act in response to the deposition notice and to produce Trend's records showing discharge of the $200,000 note. He stated: "I have had an opportunity to review all the records of the corporation with regards to those two mortgages and the property involved, and I have also spoken with Mr. Bicki [Trend's attorney] about that. I am satisfied that I have sufficient knowledge to perform my function and proceed in trying to protect the property interest that Trend Precious Metals has in that land and building." O'Brien later stated that he lacked personal knowledge of whether Walter Sammartino had signed the discharge of the promissory note, whether Trend actually received the $200,000 reflected in the note, and whether Trend had actually issued a payment to Sammartino for that amount. He stated further that "[t]o the degree that it involves the counterclaim I have no personal knowledge, nor do I represent the corporation in that regard, so I have to limit my responses to the portion of the cite that relates to the two pieces of property." Therefore, Trend was unable to present, through O'Brien, any testimonial evidence with respect to Shawmut's counterclaim for over $2 million, although it did produce a letter signed by Walter Sammartino purporting to evidence the payment of this debt.

During Volpe's deposition she identified Walter Sammartino's handwriting and signature purporting to declare null and void the promissory note evidencing the $200,000 loan to Trend. Volpe also identified Walter Sammartino's signature on a letter dated June 26, 1987, acknowledging the receipt of a specific amount of gold from Trend, which reduced Trend's outstanding balance from $2,198,037.43 to zero while it

remained in Sammartino's vaults. Although Volpe's initials also appeared on the letter, she testified that she did not type it. She also asserted that she was unaware of the receipt of any gold from Trend on June 26. Finally Volpe identified a Sammartino account ledger showing, as of June 25, 1987, Trend's outstanding balance of $2,198,142.03 due Sammartino.

Armed with the limited information adduced through discovery, Shawmut filed a motion for summary judgment on its counterclaim pursuant to Rule 56 of the Superior Court Rules of Civil Procedure. Shawmut also moved for dismissal of Trend's claim as a sanction under Rule 37 for failing to provide any meaningful discovery.

On its motion for summary judgment, Shawmut argued that Trend had failed to produce any competent evidence to raise a material issue of fact with respect to its $2 million indebtedness. It asserted that there was no testimony from Trend to attest to the reliability of its business records showing the debt had been paid. After a hearing on March 21, 1989, the trial justice therefore ordered the parties to prepare supplemental memoranda solely on the issue of the admissibility of Trend's documentation under the business-records exception to the hearsay rule.

On April 4, 1989, the trial justice conducted an additional hearing and considered the supplemental memoranda of the parties, including an affidavit of Stephen Saccoccia stating that all the records produced at the O'Brien deposition were kept in the ordinary course of business. Upon the presentation of this additional information, the trial justice granted both of Shawmut's motions. The trial justice stated:

"I find Mr. O'Brien to be a very exact person, and he was very careful to indicate, when he was examined in the deposition, exactly the extent of his involvement in this case, to the extent as saying that he had no involvement in this case as it related to the counterclaim or the cross action. He said he was engaged specifically in this matter as it related to

the discharge of two mortgages. That is my recollection of his testimony."

Therefore, the trial justice gave credence to O'Brien's deposition testimony disclaiming personal knowledge while placing little weight upon Saccoccia's last-minute affidavit. We believe that the trial justice was in error in granting the motion for summary judgment regardless of O'Brien's lack of personal knowledge of Trend's record-keeping practices, and we also believe the dismissal of Trend's complaint pursuant to Rule 37 was inappropriate for reasons we shall discuss.

## I

### SUMMARY JUDGMENT

■■■ Rule 56 provides a vehicle for curtailing litigation in its early stages if it is found that no genuine issue of material fact requires resolution. Summary judgment, however, is a drastic remedy requiring cautious application. *See Mullins v. Federal Dairy Co.*, 568 A.2d 759, 761 (R.I. 1990). The standard for granting a Rule 56 motion has been articulated as follows:

"[W]hen a trial justice is passing on a motion for summary judgment, the only question before him or her is whether there is a genuine issue as to any material fact which must be resolved. * * * If an examination of the pleadings, affidavits, admissions, answers to interrogatories, and other similar matters, viewed in the light most favorable to the opposing party, reveals no such issue, then the suit is ripe for summary judgment." *Rhode Island Hospital Trust National Bank v. Boiteau*, 119 R.I. 64, 66, 376 A.2d 323, 324 (1977).

Further, the party opposing the motion bears the burden of proving, with competent evidence, the existence of a factual dispute. *Industrial National Bank v. Patriarca*, 502 A.2d 336, 338 (R.I.1985); *Steinberg v. State*, 427 A.2d 338, 339–40 (R.I.1981).

■■ With these principles to guide us, we now consider the propriety of the trial justice's granting of summary judgment on Shawmut's counterclaim. When the doc-

uments presented are viewed in the light most favorable to Trend, we believe the trial justice was in error in granting Shawmut's motion. Elizabeth Volpe, a forty-year employee of Sammartino, identified Walter Sammartino's handwriting on both the discharge of the $200,000 note as well as the June 26, 1987 letter acknowledging the receipt and storage of 4,949.42 ounces of Trend gold, reducing the $2 million debt to zero. This evidence alone raises a question of fact sufficient to withstand a motion for summary judgment. Simply because Volpe lacked personal knowledge of the transactions evidenced in these documents should not preclude the trial justice from concluding they raise a genuine issue of material fact requiring a trial on the merits.[1] Therefore, the trial justice's grant of summary judgment requires reversal.

## II

### MOTION TO DISMISS

Trend also contends that the trial justice erred in dismissing its claim against Sammartino pursuant to Rule 37(d). Rule 37(d) provides in pertinent part:

> "*Failure of Party to Attend or Serve Answers.* If a party or an officer or managing agent of a party without good cause fails (1) to appear before the officer who is to take his deposition after being served with a proper notice, or (2) to serve answers to interrogatories submitted under Rule 33 after proper service of such interrogatories, the court on motion may make such orders in regard to the failure as are just, including striking out all or any part of any pleading of that party, or dismissing the action or proceeding or any part thereof, or entering judgment by default against that party."

Our standard of review in such a situation is whether the trial justice's action in imposing such a sanction constitutes an abuse of discretion. *See Hodge v. Osteopathic General Hospital,* 105 R.I. 3, 10–11, 249 A.2d 81, 85 (1969).

In *Pulawski v. Pulawski,* 463 A.2d 151 (R.I.1983), we considered the propriety of the imposition of sanctions in a civil action upon a litigant asserting his/her Fifth Amendment right against self-incrimination. After reflecting upon the decisions in both State and Federal courts, we concluded "that the imposition of sanctions in a civil action upon one who refused to answer questions relating to the subject matter in issue on the ground of self-incrimination is not a violation of any right guaranteed by the Fifth Amendment to the Constitution of the United States or article I, section 13 of the Rhode Island Constitution." *Id.* at 157. These sanctions include the drawing of an adverse inference against the party asserting the privilege. *Id.* at 156. Furthermore we asserted that: "[A]lthough a default judgment should not be granted against a defendant purely by reason of his assertion of his privilege against self-incrimination, such refusal may be taken into account in the process of evaluating the evidence presented by a plaintiff or other moving party." *Id.* at 157.

Under *Pulawski,* therefore, dismissal is a sanction available to the trial justice in these circumstances. However, the facts here do not justify the imposition of such a severe sanction when an alternative, less drastic method is readily available: the drawing of an adverse inference against the party claiming the privilege. Trend produced all the information it was capable of producing in light of Saccoccia's Fifth Amendment claim, and therefore, the trial justice abused his discretion in imposing the sanction. We are of the opinion that dismissal in these circumstances would have a chilling effect upon parties wishing to assert their rights against compelled self-incrimination. This is especially true

---

**1.** A great deal of effort was spent arguing admissibility under Rule 803(6) of the Rhode Island Rules of Evidence, the business-records exception to the hearsay rule. We believe that admissibility of the note and the letter under Rule 803(6) are irrelevant to whether Volpe's identification of Walter Sammartino's signature on these documents creates a genuine issue of fact requiring resolution at trial. A document signed by a party-opponent is not hearsay and is admissible under Rule 801(d)(2).

**990**

in the case at bar wherein Shawmut's assignor, Sammartino, has claimed the same privilege.

Accordingly the plaintiff's appeal is sustained, the order granting the motion to dismiss is reversed, the summary judgment order is vacated, and the case is remanded to the Superior Court for further proceedings.