# IN THE COURT OF APPEALS OF TENNESSEE
## AT NASHVILLE
January 8, 2002 Session

## KIMBERLY LYNN HAAS v. ALBERT JAMES HAAS.

**Appeal from the Circuit Court for Davidson County**
**No. 99D-3509     Muriel Robinson,  Judge**

——————————————

**No. M2000-02850-COA-R3-CV - Filed July 18, 2002**

——————————————

In this appeal from the Davidson County Circuit Court, the Appellant, Kimberly Lynn Haas, questions whether the trial court erred in granting her an absolute divorce and rendering a final disposition of the parties' marital property, whether the trial court erred in denying the appellant's motion for judgment on the pleadings, whether the trial court erred in refusing to bifurcate the issues of liability and damages to the appellee's two antique chairs, whether the trial court erred in its division of the appellant's 401K Deferred Compensation Plan, whether the trial court erred in permitting the appellee to assert the Fifth Amendment on the issues of dissipation of marital assets and adultery, whether the trial court erred in refusing to meaningfully consider the appellant's gift of $25,000 to the appellee in dividing the parties' property, whether the trial court erred in awarding the appellee the Toyota 4-Runner, whether the trial court erred in awarding the appellee the rosewood antique table, whether the trial court erred in awarding the appellee the $2,500 General Motors Cash Rebate, whether the trial court erred in not requiring the appellee to assume any of the outstanding marital debt on the Honda Accord, whether the trial court erred in its division of the General Motors credit card debt, and the method of payment of such marital debt.  We affirm the judgment of the trial court in part, reverse in part and remand as consistent with this opinion.  Costs of this appeal shall be split between the parties.

### Tenn.R.App.P.3. Appeal as of Right; Judgment of the Circuit Court
### Affirmed in Part, Reversed in Part and Remanded in Part

DON R. ASH, S.J., delivered the opinion of the court, in which WILLIAM B. CAIN, J., and BEN H. CANTRELL, P.J., M.S., joined.

R. Eddie Davidson, Nashville, Tennessee, for the appellant, Kimberly Lynn Haas.

Phillip Robinson, Nashville, Tennessee, for the appellee, Albert James Haas.

# OPINION

## I.

This is an appeal from a judgment entered by the Fourth Circuit Court for Davidson County in a divorce action between the Appellant/Plaintiff, Kimberly Lynn Haas, and the Appellee/Defendant, Albert James Haas. The parties were married on November 19, 1994. Mr. Haas entered active military service on October 1, 1999. Mr. Haas left the marital residence in November 1999 without notice to Ms. Haas or her fourteen-year old daughter from a previous relationship. The stepdaughter responded to Mr. Haas' leaving by throwing two of his antique chairs over the balcony. Ms. Haas allegedly contacted Mr. Haas' superiors at the Army, declaring her husband abandoned her and was not supporting her financially. On December 13, 1999, Ms. Haas filed a Complaint for legal separation. She testified she still loved Mr. Haas and did not want a divorce. In contrast, Mr. Haas has not spoken to Ms. Haas since leaving the household and has expressed he will never return to her.

On December 30, 1999, Mr. Haas filed a Motion, <u>inter alia</u>, seeking damages for two antique chairs and requesting the court to prohibit Ms. Haas from contacting the United States Army regarding his activities. Thereafter, on January 19, 2000, Mr. Haas filed an Answer, admitting he committed adultery during the marriage, and a Counter-Complaint for divorce. On February 9, 2000, the trial court granted Mr. Haas' motion of December 30, 1999,and found Ms. Haas liable for the damage to Mr. Haas' antique chairs. The wife filed a Motion opposing the trial court's judgment regarding the damaged chairs. She then filed a Motion for judgment on the pleadings on April 7, 2000. The trial court denied this motion. On May 19, 2000, the trial court made an evidentiary ruling permitting Mr. Haas to assert the Fifth Amendment regarding his adulterous relationships. Ms. Haas filed a Motion seeking clarification of this order on May 26, 2000. The trial court held Mr. Haas would be permitted to rely upon the Fifth Amendment regarding any adultery committed after October 1, 1999—the date he went on active duty in the military. Ms. Haas filed a Motion to exclude from trial all issues concerning the actions of her daughter, or in the alternative, to bifurcate the trial on issues regarding liability and damages to Mr. Haas' antique chairs. The trial court denied this motion on September 8, 2000.

A trial was held in this cause on September 11, 2000. The trial court granted Ms. Haas an absolute divorce, and rendered a final disposition regarding the parties' property, including an order for Ms. Haas to pay Mr. Haas $39,000 under the settlement of the parties' deferred compensation plans. The trial court's order was entered October 23, 2000. Ms. Haas filed a notice of appeal on November 14, 2000 and filed a Motion for the stay of the proceedings on November 21, 2000. On December 14, 2000, the trial court granted her Motion and stayed all matters pending appeal.

## II.

Ms. Haas raises eleven issues for our review, which we restate as follows:

1. Did the trial court err in granting the appellant an absolute divorce and rendering a final disposition of the parties' marital property;
2. Did the trial court err in denying the appellant's Motion for judgment on the pleadings;
3. Did the trial court err in refusing to bifurcate the issues of liability and damages to the appellee's two antique chairs;
4. Did the trial court err in its division of personal property;
5. Did the trial court err in its division of the appellant's 401K Deferred Compensation Plan; and
6. Did the trial court err in permitting the appellee to assert the Fifth Amendment on the issues of dissipation of marital assets and adultery?

## III.

**1. Did the trial court err in granting the appellant an absolute divorce and rendering a final disposition of the parties' marital property?**

Ms. Haas argues the trial court erred in granting her an absolute divorce pursuant to T.C.A. § 36-4-129 when she only pled for legal separation pursuant to T.C.A. § 36-4-102. T.C.A. § 36-4-129 provides the court may, upon…proof of any ground for divorce pursuant to T.C.A. § 36-4-101, grant the divorce to the party who was least at fault. In accordance with this provision, the trial court granted Ms. Haas an absolute divorce in light of Mr. Haas' admitted adultery. Ms. Haas adamantly insists she never requested a divorce and cannot be entitled to relief for which she did not request. Ms. Haas further maintains she should not be circumvented from receiving the relief for which she rightfully pled.

T.C.A. § 36-4-102(a) provides a party who alleges grounds for divorce from the bonds of matrimony may file a complaint for only legal separation as an alternative to filing a complaint for an absolute divorce. The statute indicates the court shall declare the parties legally separated unless the other party specifically objects to the granting of an order for legal separation. The prospects of reconciliation are a major factor guiding the court's discretionary determination regarding ordering legal separation or an absolute divorce. The trial judge may grant legal separation and decline to distribute the marital property where the possibility of reconciliation is promising. In contrast, divorce and property division is generally considered preferable where the prospects of reconciliation are poor or nil and the marital relationship has ended. Reconciliation is impossible in the present case as Mr. Haas clearly declared his intention to never return to Ms. Haas.

The trial court's ruling is also consistent with an analysis of the history of Tennessee divorce powers. The court recently examined its power to grant an absolute divorce where continued cohabitation is unacceptable in Earls v. Earls, 42 S.W.3d 877 (Tenn. Ct. App. May 14, 2000). The court stated,

3

"Upon proof of any ground for divorce in Tenn. Code Ann. § 36-4-101, including inappropriate marital conduct, the general assembly has empowered the courts to grant a divorce to the party who was less at fault or, if either or both parties are entitled to a divorce, declare the parties to be divorced, rather than awarding a divorce to either party alone…Accordingly a Tennessee court should grant a divorce from the bonds of matrimony whenever there is evidence of continued misconduct by one or both spouses that makes continued cohabitation unacceptable." Earls v. Earls, at 833.

Ms. Haas attempts to distinguish this case from Earls v. Earls, where the husband first filed for divorce on grounds of irreconcilable differences, and later by an amended complaint alleging inappropriate marital conduct. Ms. Earls did not plead for a divorce in any of her pleadings, but affirmatively requested spousal support and injunctive relief. In contrast, Ms. Haas reiterates she affirmatively and proactively filed a complaint for a legal separation. She remarks this statute was relatively new at the time of her filing. Ms. Haas speculates Ms. Earls may have sought relief under the legal separation statute if it were available. She emphasizes the legal separation statute was recently enacted by our legislature. However, our trial courts have been empowered since 1933 to grant an absolute divorce, even where the complainant only requested a legal separation, when reconciliation between the parties is impossible and no societal interest can be served by perpetuation of the union. Lingner v. Lingner, 165 Tenn. 525, 56 S.W.2d 749 (1933). The Tennessee Supreme Court remarked the purpose of legal separation is to provide the parties with time to allow their passions to subside and promote reconciliation. Legal separation would merely prolong a bad situation that society has no interest in preserving where reconciliation is impossible. Id. at 752. Finally, the judgment of the court ultimately controls whether legal separation or an absolute divorce is appropriate. The Court stated, "The wishes of neither party in a divorce case control the actions of the court. The court, of course, gravely considers the desires of the wronged party, but the court reserves the right to determine for itself what is best for a party." Id at 752.

The court recently reiterated the Lingner analysis of legal separation in Asher v. Asher, E2000-00821-COA-R3-CV, Tenn. App. LEXIS 342 (Tenn. Ct. App. May 9, 2001). Ms. Asher filed for legal separation under T.C.A. § 36-4-102 and her husband counterclaimed for divorce. The trial court granted the wife a divorce under T.C.A. § 36-4-119, and Ms. Asher appealed, arguing the trial court erred because she requested only a legal separation. The Court of Appeals rejected Ms. Asher's argument, declaring the language of T.C.A. § 36-4-119 vests broad discretion in the trial court regarding the type and extent of relief granted. The Court stated, "While we acknowledge that Ms. Asher prayed for legal separation only in her complaint, the Chancery Court was not restricted by her request." Id, at *2-3. The Court continued with the Lingner analysis, and then also indicated the testimony of the parties regarding adultery and inappropriate marital conduct was sufficient to grant an absolute divorce pursuant T.C.A. § 36-4-102(d).

The trial court was not restricted by her request for legal separation and properly granted an absolute divorce in this matter.

**2. Did the trial court err in denying the appellant's motion for judgment on the pleadings?**

Ms. Haas claims the trial court erred in denying her Motion for judgment on the pleadings. Motions for Judgment on the Pleadings are governed by rule 12.03 of the Tennessee Rules of Civil Procedure. Rule 12.03 provides:

> After the pleadings are closed, but within such time as not to delay the trial, any party may move for judgment on the pleadings. If, on a motion for judgment on the pleadings, matters outside the pleadings are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56.

Ms. Haas maintains her motion should have been granted since she was clearly entitled to legal separation under T.C.A. § 36-4-102 in light of Mr. Haas' acknowledgment of adultery. Although Ms. Haas correctly proclaims she was entitled to legal separation, she fails to consider the significance of Mr. Haas' Counter-Complaint for divorce. Mr. Haas asserted he was entitled to a divorce based upon grounds of inappropriate marital conduct and irreconcilable differences. The trial judge believed the final determination of these issues was more appropriate for trial. The Committee Comment regarding the rule for judgment on the pleadings provides trial judges with this discretion: "Rule 12.03 allows these matters and the motion for judgment on the pleadings to be disposed of in advance of trial, upon application of any party, but *the trial judge may defer hearing and determination of these matters until the trial* (emphasis added)." Consequently, this Court concludes the trial court was justified in denying Ms. Haas' Motion for judgment on the pleadings.

3. **Did the trial court err in refusing to bifurcate the issues of liability and damages to the appellee's two antique chairs?**

Ms. Haas argues the trial court erred by refusing to bifurcate the issues of liability and damages to Mr. Haas' antique chairs. The evidence showed Ms. Haas' daughter threw her stepfather's chairs from the balcony when she discovered he abandoned the residence. The trial court ruled Ms. Haas would be responsible for her daughter's damage to the chairs.

Mr. Haas insists Ms. Haas should compensate him for the damage to the chairs because each party is obligated not to dissipate or devalue the marital estate after filing for divorce. T.C.A. § 36-4-121(c)(5). The Kentucky Court of Appeals deftly described the public policy behind the court's examination of dissipation of assets in Robinette v. Robinette, 736 S.W.2d 351, 354 (Ky. Ct. App. 1987), where they declared the ultimate question to be answered when considering this issue is whether the assets were expended by one spouse with the intent of diminishing the other spouse's share of the marital estate. The record in this matter does not support the conclusion that Ms. Haas took any affirmative action to deprive Mr. Haas of his share of the marital estate.

Furthermore, Ms. Haas indicates T.C.A. § 37-10-103 governs a parent's liability for the torts of a child. That statute reads:

> "(A) A parent or guardian shall be liable for the tortuous activities of a minor child that causes injury to person or property where **the parent or guardian knows or should**

**know, of the child's tendency to commit wrongful acts which would be expected to cause injury to persons and property and where the parent or guardian has an opportunity to control the child but fails to exercise reasonable means to restrain the tortuous conduct** (emphasis added).

(B) A parent or guardian should be presumed to know if a child's tendency to commit wrongful acts if the child has previously been charged with or been responsible for such acts."

The evidence indicated Ms. Haas was in the garage when the chairs were damaged and was unaware of her daughter's actions until afterwards. Nor does the record contain a finding regarding Ms. Haas' knowledge of her daughter's likelihood to damage property. Thus, the record in this matter does not support the trial court's judgment in favor of Mr. Haas. This Court concludes the trial court erred by refusing to bifurcate the issues of liability and damages to Mr. Haas' antique chairs, as well as requiring Ms. Haas to pay for the damage caused by her daughter. Consequently, Mr. Haas shall receive the two damaged chairs per the trial court's property division but Ms. Haas shall be relieved from the Judgment Order for damages. Finally, Mr. Haas may elect to sue his former stepdaughter for the damage to his separate property in an appropriate forum if he so chooses.

## 4. Did the trial court err in its division of personal property?

Ms. Haas raises eight issues challenging the trial court's division of personal property. She specifically questions the trial court's consideration of her gift of $25,000 to the appellee, the award of the Toyota 4-Runner, rosewood antique table and $2,500 General Motors Cash Rebate to the appellee, the trial court's refusal to require the appellee to assume any of the outstanding marital debt on the Honda Accord, and the division of the General Motors credit card debt.

T.C.A. § 36-4-121 governs the division of property in divorce cases and generally provides the trial court shall equitably divide the property without regard to fault. The trial court must also employ the same analysis when dividing marital debts. Mahaffey v. Mahaffey, 775 S.W.2d 618, 623 (Tenn. Ct. App. 1989). This statute confers wide discretion on the trial court in adjusting and adjudicating the parties' rights and interests in all jointly owned property. Fisher v. Fisher, 648 S.W.2d 244, 246 (Tenn. 1983). Accordingly, its division of the marital estate is entitled to great weight on appeal. Edwards v. Edwards, 501 S.W.2d 283, 288 (Tenn. Ct. App. 1973). This Court shall presume the trial court's division of property was correct unless the evidence preponderates otherwise. Lancaster v. Lancaster, 671 S.W.2d 501, 502 (Tenn. Ct. App. 1984); Tenn.R.App.P. 13(d). Furthermore, it is well established the property division must only be "equitable" and need not be an "equal" one, as each case is unique and must be decided on its own facts. Wade v. Wade, 897 S.W.2d 702, 717 (Tenn. Ct. App. 1994); Batson v. Batson, 769 S.W.2d 849, 859 (Tenn. Ct. App. 1988). Nor is each party entitled to receive a share of each piece of marital property. Thompson v. Thompson, 797 S.W.2d 599, 604 (Tenn. Ct. App. 1990). Rather, the correctness of the trial court's property division is determined solely by its final results. Id.; Bookout v. Bookout, 954 S.W.2d 730, 732 (Tenn. Ct. App. 1997); Wade v. Wade, at

717. Thus, although Ms. Haas challenges several aspects of the property division, this Court will focus on the final results achieved by the trial court.

The equity of the overall property division is determined by the following factors set forth in T.C.A. § 36-4-121(c):

(1) The duration of the marriage;

(2) The age, physical and mental health, vocational skills, employability, earning capacity, estate, financial liabilities and financial needs of each of the parties;

(3) The tangible or intangible contribution by one party to the education, training or increased earning power of the other party;

(4) The relative ability of each party for future acquisition of capital assets and income;

(5) The contribution of each party to the acquisition, preservation, appreciation or dissipation of the marital or separate property, including the contribution of each party to the marriage as a homemaker, wage earner or parent, with the contribution of a party as homemaker or wage earner to be given the same weight if each party fulfilled its role;

(6) The value of the separate property of each party;

(7) The estate of each party at the time of the marriage;

(8) The economic circumstances of each party at the time the division of property is to become effective;

(9) The tax consequences to each party; and

(10) Such other factors as are necessary to consider the equities between the parties.

This Court considers Ms. Haas' higher net worth prior to the marriage, her advanced education, and superior earning power prior to the marriage, throughout the relationship, and afterwards, to be highly relevant to the property division. Ms. Haas challenges several aspects of the trial court's property division, whereby she received the vast majority of the marital property. This Court concludes the final results of the trial court's property division were not inequitable towards Ms. Haas.

**1. Did the trial court err in its division of the appellant's 401K Deferred Compensation Plan?**

Ms. Haas argues the trial court erred in its division of her 401K Deferred Compensation Plan. Ms. Haas specifically challenges the trial court's method of valuing the deferred compensation plans. She also alleges the trial court erred in determining Mr. Haas was entitled to any portion of the increased value of her deferred compensation plan where he made no substantial contributions to such increase. Finally, Ms. Haas insists the trial court erred by disregarding principles of equity when it equally divided the increased value of the deferred compensation plans held by both parties.

In contrast to a pension plan, where an employee earns future compensation for present employment, a deferred compensation plan is funded with pre-tax monies earned in the present. Mr. Haas' Pepsico Deferred Compensation Plan was funded entirely during the marriage and had

a value of $17,900. In contrast, Ms. Haas' Security First Group Deferred Compensation Plan was valued at $91,804.59 on November 2, 1994, just prior to the marriage. Her plan appreciated to $123,264.05, and Ms. Haas withdrew $76,627.17 on October 10, 1996 for the purpose of purchasing a more expansive residence. $46,636.88 remained after the distribution. Ms. Haas made additional contributions during the marriage totaling $16,400. The deferred compensation funds of both parties received significant contributions during the marriage and the trial court considered these plans to be marital property. In its final disposition of marital property, the trial court jointly divided in equal shares the increase in the value of the deferred compensation plans held by both parties. The trial court ultimately determined Ms. Haas owed Mr. Haas $39,000 as his share of the deferred compensation plans.

Ms. Haas specifically challenges the trial court's method of valuing the deferred compensation plans. She argues the trial court erred in determining the cash value of the deferred compensation plans was the actual amount of funds contained within the plans. Ms. Haas submits the "present value" of the deferred compensation plans was their value at the time of withdrawal of the funds, taking into account the necessity for the payment of income tax and penalties for early withdrawal. However, we find Ms. Haas' objections to the trial court's method of valuation to be without merit. The choice of valuation method remains within the sound discretion of the trial court to determine after consideration of all relevant factors and circumstances. Cohen v. Cohen, 937 S.W.2d 823, 831 (Tenn. 1996). We do not find the trial court abused its discretion in selecting the method of valuation.

Ms. Haas further contends the trial court erred in awarding Mr. Haas one-half of the increased value of her deferred compensation plan. Ms. Haas claims Mr. Haas should not be entitled to any portion of the increased value of her deferred compensation plan where he made no substantial contributions to such increase. See Sherrill v. Sherrill, 831 S.W.2d 293, 295 (Tenn. Ct. App. 1992); Crews v. Crews, 743 S.W.2d 182, 189 (Tenn. Ct. App. 1987). As stated previously, Mr. Haas' Pepsico Deferred Compensation Plan was funded entirely during the marriage and had a value of $17,900, and Ms. Haas made additional contributions to the Security First Group Deferred Compensation Plan during the marriage totaling $16,400. The deferred compensation funds of both parties received significant contributions during the marriage. This court will not disturb the trial court's conclusions regarding the contributions of the parties to the increased value of the deferred compensation plans.

Ms. Haas asserts the trial court disregarded all principles of equity in the distribution of marital property by equally dividing the increased value of both deferred compensation plans. However, an equitable distribution of property during the dissolution of a marriage does not necessarily require an equal disposition. Rather the trial court must divide the property in the most equitable manner. Cohen v. Cohen, at 832. The trial court shall equitably divide the property in a divorce case without regard to fault under T.C.A. § 36-4-121. As we stated earlier, the trial judge is afforded wide discretion regarding the division of the marital estate. Fisher v. Fisher at 246. The trial court's division of the marital estate is entitled to great weight on appeal. Edwards v. Edwards at 288. This court believes the evidence in this case does not preponderate against the trial court's presumption of correctness. Lancaster v. Lancaster, Tenn.R.App.P. 13(d).

This court affirms the trial court's division of the 401K Deferred Compensation Plans.

**2. Did the trial court err in permitting the appellee to assert the Fifth Amendment on the issues of dissipation of marital assets and adultery?**

Ms. Haas argues the trial court erred in permitting Mr. Haas to assert the Fifth Amendment privilege regarding adultery and dissipation of marital assets. Mr. Haas feared his testimony might be used against him under the Uniform Code of Military Justice (UCMJ) in a military court. The trial court permitted Mr. Haas to assert the Fifth Amendment with respect to activities occurring after October 1, 1999, the date when Mr. Haas began active military service. Ms. Haas requests this Court remand the case for a new trial, with explicit instructions to the trial court to permit the admission of evidence establishing Mr. Haas' alleged dissipation of marital assets and adultery.

There is no question that a party to a civil action may claim the benefit of the privilege against self-incrimination. Arndstein v. McCarthy, 254 U.S. 71 (1920). However, the privilege against self-incrimination is an affirmative right and will be deemed waived unless it is effectively invoked. Rogers v. United States, 340 U.S. 367 (1951). The privilege should only be sustained in the absence of any previous admission of guilt or incriminating facts. McCarthy v. Arndstein, 262 U.S. 355, 359 (1923). Witnesses who fail to invoke the Fifth Amendment against questions to which they could have claimed it are deemed to have waived the privilege respecting all questions on the same subject matter. United States v. O'Henry's Film Works, Inc., 598 F.2d 313 (2d Cir. 1979).

The record relevant to this issue indicates Mr. Haas waived his right to invoke the privilege against self-incrimination in three respects. First, the protection of the Fifth Amendment does not extend to non-privileged communications to third parties, such as the sworn Answer filed by Mr. Haas in which he admitted the alleged adultery. Next, Mr. Haas' voluntary testimony throughout this proceeding is also consistent with the waiver of his Fifth Amendment privilege. Finally, Mr. Haas should not be permitted to seek affirmative relief in the form of an absolute divorce and an equitable property division and simultaneously preclude Ms. Haas from cross-examining him on matters relevant to such relief.

Mr. Haas entered active military service on October 1, 1999. The potential for prosecution for adultery under the Uniform Code of Military Justice was present when Mr. Haas filed a sworn Answer in which he admitted the incriminating allegations of adultery in a general statement that did not specify the dates of such marital infidelity. Mr. Haas could have invoked his Fifth Amendment privilege out of fear of potential military prosecution at the time he filed his sworn Answer on January 19, 2000. Yet Mr. Haas admitted his guilt regarding the acts of adultery alleged in paragraph 4 of the Complaint. The Fifth Amendment protection against compulsory furnishing of evidence against oneself does not extend to non-privileged communications to third parties. Sheets v. Hathcock, 528 S.w.2d 47 (Tenn. Crim. App. 1975). Mr. Haas' Answer is a non-privileged document of public record. The filing of this sworn document admitting his guilt effectively waived his Fifth Amendment privilege regarding the details of those acts. A witness in a civil case who discloses a fact or transaction, without invoking his privilege against self-incrimination, is deemed to have waived the privilege with

9

respect to the particulars of such fact or transaction.  International Brotherhood of Teamsters v. Hatas, 252 So.2d 7, 22 (Ala. 1971). *See also* Bonham v. Bonham, 489 So.2d 578 (Ala. Civ. App. 1985).

The Fifth Amendment implications of filing a verified answer was closely examined in Southbridge Finishing Company v. Golding, 143 N.Y.S.2d 911 (S. Ct. NY 1955).  The privilege against self-incrimination was held to be waived, "or, more accurately I think, rendered untenable, only when (apart from the instances of a defendant taking the stand upon the trial of an indictment against him) the party asserting the privilege has actually given incriminating evidence against himself (as distinguished from 'voluntarily testifying about the subject matter in issue'); and as the service of even a verified answer which denies the charges of a crime, or a verified answer which, in addition to such denial, sets up affirmative defenses which are not in themselves incriminating, is not the giving of incriminating evidence, it necessarily follows that the service of such an answer is not a waiver." Southbridge Finishing Company v. Golding.  In contrast, Mr. Haas filed a sworn Answer admitting he committed the acts of adultery alleged in the Complaint.  Thus, Mr. Haas furnished incriminating evidence against himself and waived his Fifth Amendment privilege regarding the details of those acts.

Furthermore, Mr. Haas' testimony throughout this proceeding is also consistent with the waiver of his Fifth Amendment privilege.  "Requiring full disclosure of details after a witness freely testifies to a criminating fact does not rest upon a further 'waiver' of the privilege against self-incrimination." Rogers v. United States, at 374.  Mr. Haas had already waived his privilege of silence when he freely admitted the allegations of adultery in his Answer.  *See* Rogers v. United States, at 374.  "As to each question to which a claim of privilege is directed, the court must determine whether the answer to that particular question would subject the witness to a "real danger" of further crimination." Rogers v. United States, at 374.  The record reveals Mr. Haas voluntarily chose to take the stand and candidly admitted his infidelity throughout the marriage.  His attorney ultimately stipulated Mr. Haas was co-obligated on a lease with his paramour, to which Mr. Haas earlier testified he paid the entire lease amount.  Furthermore, an application for a loan on a vehicle purchased the day after Mr. Haas abandoned the marital residence was introduced into evidence.  This document also identified Mr. Haas' paramour as a co-applicant and included her vehicle as a trade-in on the new purchase.  We believe the answers to the questions regarding the alleged dissipation of assets would not subject Mr. Haas to a "real danger" of further crimination in light of his previous sworn Answer and testimony admitting adultery.

Finally, the Answer filed by Mr. Haas sought affirmative relief in the form of a prayer for an absolute divorce and an equitable property division.  An equitable distribution of property is contingent upon several factors, including the conduct the parties regarding the dissipation of assets.  Such a limitation of cross-examination as sought by Mr. Haas is in derogation of Ms. Haas' right to cross-examine on these relevant issues.  Mr. Haas should not be permitted to seek affirmative relief and simultaneously preclude Ms. Haas from cross-examining him on matters relevant to such relief.  *See* Pulawski v. Pulawski, 463 A.2d 151 (R.I. 1983).  One who seeks affirmative relief by way of counterclaim, cross-petition, or otherwise, may appropriately be subjected to the sanction of dismissal of such claim for affirmative relief when they refuse to answer questions in discovery or at trial which are relevant and material to the issues presented.

"When the court deals with private litigants, the privilege against self-incrimination must be weighed against the right of the other party to due process and a fair trial. The shield of the privilege must not be converted into a sword." Pulawski v. Pulawski, id. *See* Brown v. United States, 356 U.S. 148 (1958).

Mr. Haas specifically objected to the granting of a legal separation and freely provided the incriminating statement admitting his adultery in an effort to obtain affirmative relief in the form of an absolute divorce. Thus, the shadow of testimonial compulsion upon the accused is lacking in this case. *See* Sheets v. Hathcock, id., *quoting* Schmerber v. California, 384 U.S. 757, 765 (1966). Mr. Haas cannot admit he committed adultery and voluntarily take the stand in his own behalf, and then avoid cross-examination regarding the disputed details of those acts and the possible dissipation of assets raised by his own testimony. Consequently, this court concludes Mr. Haas waived his Fifth Amendment privilege regarding the details of the possible dissipation of assets. The trial court erred in permitting Mr. Haas to refuse to answer relevant questions on cross-examination regarding this issue. This court denies Ms. Haas' request to remand this case for a new trial. However, this case shall be remanded for the limited purpose of considering the admission of evidence establishing Mr. Haas' alleged dissipation of marital assets.

## IV.

This Court concludes the trial court did not err in granting the appellant an absolute divorce and rendering a final disposition of the parties' property, the trial court's denial of appellant's motion for judgment on the pleadings was proper, the trial court erred in refusing to bifurcate the issues of liability and damages to the appellee's antique chairs and by requiring the appellant to pay for the damage caused by her daughter, the trial court's property division was proper, and the trial court erred in permitting the appellee to assert the Fifth Amendment on the issue of dissipation of marital assets. For the foregoing reasons, the judgment of the trial court is affirmed in part, reversed in part and remanded in part, as consistent with this opinion. Costs of this appeal shall be split between the parties.

_____
DON R. ASH, S.J.